*405 OPINION OF THE COURT
George B. Ceresia, Jr., J.
The petitioner has commenced the instant CPLR article 78 proceeding to review a determination made on March 3, 2000 pursuant to Public Officers Law article 6, commonly referred to as the Freedom of Information Law (FOIL). Petitioner seeks copies of invoices for textbooks purchased from publishing companies for sale as new texts in the bookstore operated by the respondent Faculty-Student Association. The Faculty-Student Association, in its March 3, 2000 determination, agreed to produce the invoices, but indicated that relevant information would be redacted as being either trade secrets or information submitted to an agency by a commercial enterprise. The determination was administratively affirmed on March 24, 2000.
It is settled law that FOIL is based on the overriding policy consideration that “the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government” (Matter of Fink v Lefkowitz, 47 NY2d 567, 571). The Court of Appeals has repeatedly held that FOIL is to be liberally construed and its exemptions narrowly interpreted so that the public is granted maximum access to the records of government (see, Matter of Capital Newspapers v Whalen, 69 NY2d 246, 252; Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 564; Matter of Fink v Lefkowitz, supra, at 571; Matter of Citizens for Alternatives to Animal Labs v Board of Trustees, 92 NY2d 357 [1998]).
All agency records are presumptively available for public inspection and copying, unless the documents in question fall within one of the enumerated exemptions set forth in Public Officers Law § 87 (2) (see, Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp., 87 NY2d 410, 417; Matter of Hanig v State of N. Y. Dept. of Motor Vehicles, 79 NY2d 106, 109; Matter of Legal Aid Socy. v New York State Dept. of Social Servs., 195 AD2d 150, 152). Blanket exemptions for particular types of documents are inimical to FOIL’S policy of open government (see, Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 569; Matter of Gould v New York City Police Dept., 89 NY2d 267 [1996]). The exemptions available are to be narrowly construed, and “the agency seeking to prevent disclosure bears the burden of demonstrating the applicability of the particular exemption claimed” (Matter of Legal Aid Socy. v New York State Dept. of Social Servs., supra, at 153; see, *406 Public Officers Law § 89 [4] [b]; see, Matter of Hanig v State of N. Y. Dept. of Motor Vehicles, supra, at 109; see also, Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d 145, 158-159 [1999]). The agency at issue must “articulat[e] a particularized and specific justification for denying access” to the requested documents (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, supra, at 566; Matter of Fink v Lefkowitz, 47 NY2d 567, 571, supra; Matter of Gould v New York City Police Dept., supra, at 275 [1996]).
The court initially finds that invoices in question for which disclosure is sought are “records” within the meaning of Public Officers Law § 86 (4) and are kept or maintained by the Faculty-Student Association for an “agency” (see, Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp., 87 NY2d 410, 417 [1995], supra). The fact that petitioner is no longer editor of the Hudsonian newspaper is of no significance. There is no restriction in Public Officers Law article 6 with regard to an individual’s capacity or status in submitting a FOIL application. In the court’s view, petitioner’s former position is completely irrelevant.
Public Officers Law § 87 (2) recites, in part, as follows:
“Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that * * *
“(d) are trade secrets or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise.”
Key to the reasoning in Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. (87 NY2d 410, supra) was the finding of the Court of Appeals that there was a likelihood of substantial competitive injury to Barnes & Noble from release of the book-list to its competitor (see, id., at 421). The Court noted that Barnes & Noble had gone to considerable effort and expense to develop the booklist. The Court was of the view that to permit Encore, Barnes & Noble’s competitor, to acquire this information for the mere cost of FOIL fees would confer a windfall upon Encore, in effect, reducing Encore’s cost of business and, as a result, placing Barnes & Noble at a competitive disadvantage.
Respondents in the instant proceeding have presented evidence that the invoices which are sought contain much the *407 same information as that contained in the booklist in the Encore Coll. case (supra). Respondents have shown that only through the expenditure of considerable human effort, with the assistance of a $100,000 computer software package acquired by the Faculty-Student Association, is the textbook information collected and assembled. In this respect the court cannot distinguish the Encore Coll. case from the proceeding at bar. In the court’s view, to release this information in its entirety to the petitioner, who concedes that he desires to publish the information in the college newspaper, would potentially operate to the same kind of economic disadvantage as that forecast in the Encore Coll. case.[1]
This, however, does not end the matter. The court must next determine if it is possible to permit disclosure of the invoices in redacted form. Notably, petitioner indicates that his primary interest in seeking the invoices is to obtain information with regard to the cost of books sold at the campus bookstore. Specifically, petitioner desires to investigate student complaints about (in his words) alleged price gouging at the bookstore. Petitioner makes clear in his reply papers that he is not interested in obtaining other information.
When viewed in this light, the court is unable to discern any substantial competitive disadvantage arising by reason of mere disclosure of the identity of the books and each book’s unit price as set forth in the invoices. Such a disclosure would not reveal the bulk of the competitive information which respondents desire to protect, apart from information which is readily available to any member of the public simply by walking into the bookstore.[2]
Even where the court considers the potential impact of the disclosure on respondent’s supplier, Follett Higher Education Group, Inc. (Follett), the court finds that petitioner should prevail. While Follett has presented evidence of the efforts it has made to develop its pricing, this is not the equivalent of being forced to reveal a sizeable compilation of competitive information for the mere cost of a FOIL fee, as was the scenario *408 in Encore Coll. (supra). It is significant that, as noted, the FOIL request here was made after commencement of spring 2000 semester, at a point in time when the books had been ordered and (presumably) shipped. In addition, absent information with regard to the number of volumes that have been purchased, the unit price, standing alone, is meaningless.
Under all of the circumstances, the court concludes that the petition should be granted to the extent of requiring respondents to produce invoices redacted so as to disclose only the date of the invoice and the identity and unit price of the books which they purchased.
The petitioner has made a request for an award of counsel fees. As stated in Matter of Corvetti v Town of Lake Pleasant (239 AD2d 841, 843 [3d Dept 1997]):
“ Tt is well settled that “[a] party may receive counsel fees in a FOIL proceeding when it is established that (1) the petitioner substantially prevailed, (2) the record requested was of ‘clearly significant interest to the general public’, and (3) ‘the agency lacked a reasonable basis in law for withholding the record’ ” ’ (Matter of URAC Corp. v Public Serv. Commn., 223 AD2d 906, 907, quoting Matter of Powhida v City of Albany, 147 AD2d 236, 238, quoting Public Officers Law § 89 [4] [c] [i], [ii]). However, even if these elements are met, an. award of counsel fees remains within the discretion of the court (see, Matter of URAC Corp. v Public Serv. Commn., supra, at 907; see also, Public Officers Law § 89 [4] [c]).”
From the foregoing, it is evident that the mere fact that a petitioner in a FOIL proceeding is successful does not, of itself, serve to guarantee an award of attorney’s fees. While the petitioner can be considered in this instance to have prevailed, and while it is arguable that the case is one of at least some public interest, the court cannot conclude (due to the breadth of the original FOIL demand) that the petitioner substantially prevailed. Nor may the court conclude, in view of the Encore Coll. case (supra) that respondents lacked a reasonable basis in law for withholding the invoices.[3] Under the circumstances, the court finds that the application for attorney’s fees must be denied.
*409 The court has reviewed and considered the remaining arguments of the respondents and finds them to be without merit.
Ordered and adjudged that the petition is granted in part to the extent that respondents are directed to furnish to the petitioner, within 10 days of the date hereof, a copy of the invoices which are the subject of the instant FOIL request, which may be redacted to eliminate all information other than the date of the invoice, the identifying information with regard to the particular textbook and the unit price; and it is further ordered and adjudged that petitioner’s application for attorney’s fees is denied.

. This would be so even though the spring 2000 semester had already commenced at the time the FOIL application was received, since the invoices might nonetheless reveal information indicative of book purchasing trends which tend to repeat themselves, either semester to semester, or year to year.

. Notably, according to documentation provided by respondents, the publisher’s price (respondents’ cost) is not included in respondents’ booklist. This fact would appear to undercut application of the Encore Coll. rationale to unit cost information.

. This is so notwithstanding the alleged motives ascribed to the respondents by the petitioner (but never proven) with regard to the true reason for denial of the FOIL request.